UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:  )
 )
INTERBANK FUNDING CORP., *et al.*,  )
 )
       Debtors.  )
 )
_____  )
 )
IBF FUND LIQUIDATING, LLC,  )
 )
       Plaintiff,  )
 )
   -against-  )   No. 07-CIV-10665 (DAB)
 )
CHADMOORE WIRELESS GROUP, INC., *et al.*,  )
 )
       Defendants.  )
_____  )
ROBERT MOORE,  )
 )
       Third-Party Plaintiff,  )
 )
   -against-  )
 )
KAYE SCHOLER LLP, *et al.*,  )
 )
       Third-Party Defendants.  )

## APPELLANT'S REPLY BRIEF

BAINTON MCCARTHY LLC
J. Joseph Bainton, Esq. (JB-5934)
26 Broadway, Suite 2400
New York, NY 10004
(212) 480-3500
(212) 480-9557 (fax)

*Attorneys for Defendant Robert Moore*

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

Argument ............................................................................................................................... 2

I.  The Bankruptcy Court Does Not Have Subject Matter Jurisdiction Over This Action And, Even If It Does, The Reference Should Immediately Be Withdrawn And The Entire Case Set For An Early Jury Trial ......................................................... 2

II. The Bankruptcy Court's Denial of Motions For Summary Judgment On All The Other Claims Asserted Against Moore Based Upon the Existence Of Disputed Questions Of Material Fact Required The Denial Of Summary Judgment In Favor Of Fund LLC On Its Claim Against Moore For Breach Of The Implied Warranty Of Authority ....................................................................................................... 3

    A.  Fund LLC Cannot Recover Against An Agent Based Upon Contract That Is Unenforceable Against The Principle .................................................................. 4

    B.  Fund LLC's Knowledge of Chadmoore's Dissolution Warrants Reversal On The Implied Warranty Of Authority Claim ......................................................... 5

III. The Bankruptcy Court's Preliminary Injunction Was An Unlawful Order of Attachment ............................................................................................................ 7

IV. Moore's Pre-litigation Creation Under Nevada Law Of Juridical Entities to Which He Contributed His Then Assets For The Statutorily Approved Purpose of Protecting Them Against Future Claims Such As The Ones Asserted By Fund LLC Did Not Constitute "Prior" Contempt Of The Bankruptcy Court's Preliminary Injunction ............................................................................................ 9

V.  The Bankruptcy Court Correctly Held That Moore Cannot Be Liable Under The Colorado Personal Liability Statute And Fund LLC's Cross-Appeal Should Therefore Be Denied .............................................................................................. 10

Conclusion ........................................................................................................................... 14

## TABLE OF AUTHORITIES

**CASES**                                                                       **Page**

*Baltzen v. Nicolay*
    53 N.Y. 467 (N.Y. 1873) .................................................................................................4,7

*Barrett v. Lang,*
    243 A.D. 35 (N.Y. App. Div. 1934) ....................................................................................7

*Broughton v. Dona,*
    101 A.D.2d 897, 898 (App. Div. 1st Dep't 1984) ...............................................................6

*Brunner v. New York State Higher Educ. Services,*
    831 F.2d 395, 396 (2d Cir. 1987)........................................................................................1

*Campbell v. Muller,*
    43 N.Y.S. 233 (N.Y. App. Term 1897)...............................................................................7

*Dung v. Parker,*
    52 N.Y. 494, 500 (1873) .....................................................................................................4

*Enter. Prods. Operating, L.P. v. Enron Gas Liquids Inc. (In re Enron Corp.),*
    306 B.R. 33, 37 (S.D.N.Y. 2004).........................................................................................1

*Gracie Square Realty Corp. v. Choice Realty Cortp.,*
    305 N.Y. 271 (N.Y. 1953) ...................................................................................................4

*IAM v. Eastern Air Lines,*
    121 Bankr. 428, 432 n.5 (S.D.N.Y. 1990), aff'd 923 F.2d 26 (1991) ....................1

*In re Keene Corp.,*
    166 B.R. 31 (Bankr. S.D.N.Y. 1994)...................................................................................4

*Micciche v. Billings,*
    727 P. 2d 367 (Colo. 1986).................................................................................................11

*Riverside Research Institute v. KMGA, Inc.,*
    68 N.Y. 2d 689, 692, 497 N.E. 2d 669, 671 (N.Y. 1986).....................................7

*Sims v. Ottenhoff,*
    879 P. 2d 436 (Colo. Ct. App. 1994) ................................................................................12

*Transp. Worker Union, Local 100 v. NY City Transit Autho.*,
    505 F. 3d 226 (2d Cir. 2007)..................................................................................1

Statutes and Rules

28 U.S.C. § 157(e) ..........................................................................................................2

Fed. R. Civ. P. 1..............................................................................................................2

Fed. R. Civ. P. 54(b) .......................................................................................................1

Fed. R. Civ. P. 65............................................................................................................7

C.R.S. § 7-102-104 (2006)....................................................................................... 10-13


Other Authorities

Restatement (Third) of Agency § 6.10 (2006) ............................................................6,7

Defendant-Appellant Robert Moore ("Moore") respectfully submits this Reply Brief in support of his appeal from three "Final Judgments" of the United States Bankruptcy Court for the Southern District of New York (Hon. Burton R. Lifland, presiding), namely (1) the Judgment entered October 9, 2007 (Document Number: 185) holding Moore in contempt and imposing sanctions; (2) the Final Judgment entered October 9, 2007 (Document Number: 188) granting summary judgment in favor of Fund LLC and against Moore on Count VI of the adversary complaint and otherwise staying this action, and (3) the Judgment entered October 18, 2007 (Document Number: 191) in favor of Fund LLC and against Moore for fees and costs. This brief is also filed in opposition to the cross-appeal of Fund LLC from the order of the Bankruptcy Court dismissing one of its claims against Moore based upon Colorado corporate law. Terms previously defined are respectfully used herein without further explanation.

The numerical majority of Fund LLC's claims against Moore and all of Moore's third-party claims, including those seeking indemnity for the "judgments" in favor of Fund LLC that are the subject of this appeal, remain stayed while the parties engage in piecemeal appellate review as the consequence of the Bankruptcy Court's improvident determination that there was no just reason for delay and its express direction that the Clerk enter judgment on two of six claims asserted against Moore pursuant Federal Rule of Civil Procedure 54(b). All of Fund LLC's claims against Moore as well as all of Moore's third-party claims arise from the same common nucleus of facts. Accordingly, the entry of "judgment" on the claims that are the subject of this appeal and the staying of a final resolution of this action pending this appeal was an abuse of the Bankruptcy Court's discretion and was otherwise erroneous. Fed. R. Civ. P. 54(b); *Transp. Workers Union, Local 100 v N.Y. City Transit Auth.*, 505 F.3d 226 (2d Cir. 2007).

This piecemeal approach to litigation violates both the letter and spirit of Federal Rule of Civil Procedure 1.

## Argument

I. **THE BANKRUPTCY COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER THIS ACTION AND, EVEN IF IT DOES, THE REFERENCE SHOULD IMMEDIATELY BE WITHDRAWN AND THE ENTIRE CASE SET FOR AN EARLY JURY TRIAL.**

Moore has nothing to add to his prior comprehensive analysis of the Bankruptcy Court's lack of subject matter jurisdiction. This case does not involve a bankrupt or bankruptcy claims. It involves state law claims by a Delaware limited liability company, Fund LLC, arising under the laws of Colorado and arguably New York that all accrued, if at all, long after all bankruptcy matters giving rise to the creation of Fund LLC were resolved, plans of reorganization were confirmed and all of the assets of former bankruptcy estates were sold to persons not parties to this action.

More importantly, regardless of whether the Bankruptcy Court might have had jurisdiction over the subject matter of this action for any of the attenuated but incorrect reasons suggested by Fund LLC, the simple fact that Moore timely demanded a trial by jury eliminated any chance of the Bankruptcy Court presiding over the trial of this action.[1] 28 U.S.C. § 157(e). That a trial of an action purportedly alleging a fraud claim is required because of sharply disputed facts is hardly remarkable.

Accordingly, even if this Court concludes that the Bankruptcy Court might have subject matter jurisdiction, given the manner in which the Bankruptcy Court has intentionally delayed by perhaps as much as a year or more the resolution of this simple action on its merits to

---

[1] Pursuant to 28 U.S.C. § 157(e), the Bankruptcy Court could only preside over the trial if "specially designated to exercise such jurisdiction by the district court and with the express consent of all parties."

2

the grave prejudice of Moore and the benefit of its "favorite son" Steinberg, who is his own client for the services of his own law firm, Kaye Scholer (at substantial hourly rates), this Court should exercise its discretion to immediately withdraw the reference of this action to the Bankruptcy Court; vacate the stay of all proceedings and thereby require Fund LLC to make its automatic disclosures and the third-party defendants (including Steinberg and Kaye Scholer) to answer Moore's third-party complaint; allow the parties no more than 60 days to complete discovery; and then set the action for trial before a jury at the earliest possible date its calendar permits. The interest of justice requires no less.

II. THE BANKRUPTCY COURT'S DENIAL OF MOTIONS FOR SUMMARY JUDGMENT ON ALL THE OTHER CLAIMS ASSERTED AGAINST MOORE BASED UPON THE EXISTENCE OF DISPUTED QUESTIONS OF MATERIAL FACT REQUIRED THE DENIAL OF SUMMARY JUDGMENT IN FAVOR OF FUND LLC ON ITS CLAIM AGAINST MOORE FOR BREACH OF THE IMPLIED WARRANTY OF AUTHORITY

Fund LLC argues that reliance, or the lack thereof, is not a defense to a claim based upon the legal theory of implied warranty of authority and, therefore, as a matter of law, whenever an officer signs a contract on behalf of a dissolved corporation, he is personally liable for the dissolved corporation's liabilities whether or not the dissolved corporation itself could ever be so liable. This contention is flatly rejected by well-settled law.

Since the Bankruptcy Court found that that there were questions of fact preventing it from determining whether the Chadmoore Put could ever be enforced against Chadmoore, the dissolved corporation, the Bankruptcy Court was obliged to also deny summary judgment against Moore because he signed what might be a facially unenforceable contract without authority to do so.

### A. Fund LLC Cannot Recover Against An Agent Based Upon A Contract That Is Unenforceable Against The Principal.

The Bankruptcy Court's ruling that genuine issues of material fact exist regarding the Chadmoore Put's validity and enforceability warrants reversal of its grant of summary judgment on Fund LLC's companion claim against Moore for breach of implied warranty of authority[2]. (Document No: 184, at 15.)

When an agent exceeds his authority, he may be liable in damages to a third person with whom he contracts, because the third person is deprived of any contractual remedy against the principal. *Baltzen v. Nicolay*, 53 N.Y. 467, 470 (N.Y. 1873). For an agent to be held liable to the third party, the contract signed by the agent without authority, however, must be of a character that would have been enforceable against the principal if it had been authorized. *Id.*; *Dung v. Parker*, 52 N.Y. 494 (1873). If the law were otherwise, it would create the anomaly of a right of action against an unauthorized agent for signing a contract when no such claim would exist had the principal given the agent authority to sign the contract. *Id.* If the principal would/could not be bound by an "unauthorized contract," then the unauthorized agent cannot be bound by the same contract notwithstanding his lack of authority to sign it. *Gracie Square Realty Corp. v. Choice Realty Corp.*, 305 N.Y. 271, 282 (N.Y. 1953) ("In order for plaintiffs to recover on the second cause of action for breach of warranty of authority they must show that the agreement alleged would have been enforceable against the principal had it been authorized.").

Fund LLC argues that "an officer who contracts without authority on behalf of a dissolved corporation is personally liable for the corporation's liabilities." (Appellee's Brief at

---

[2] As the consequence of the Bankruptcy Court's piecemeal approach to appellate review, this ruling is not a subject of this appeal. In this regard, this case may be viewed as the "poster child" for the wisdom of the "final judgment" rule generally applied in the federal courts. *In re Keene Corp.*, 166 B.R. 31, 34 (Bankr. S.D.N.Y. 1994) ("The order must conclusively determine the dispute . . . and leave nothing to be done save superintend, ministerially, the execution of the decree.")

32.) The Bankruptcy Court held that the validity and enforceability of the Chadmoore Put (the contract at issue) is a question of fact, and, therefore, Chadmoore's liabilities, if any, arising from that contract have yet to be determined.[3] Thus if a trial is required to determine whether under Colorado law the Chadmoore Put could ever be enforceable against Chadmoore, the principal, then there is necessarily a question of fact as whether as an unauthorized agent Moore could have breached the implied warranty of authority. If the trial determines that the principal (Chadmoore) never could have been liable to Fund LLC under the Chadmoore Put, it will necessarily follow as a matter of law that Moore could not have breached the implied warranty of authority.

### B. Fund LLC's Knowledge Of Chadmoore's Dissolution Warrants Reversal On The Implied Warranty Of Authority Claim.

The most significant undisputed fact in this case is that **Fund LLC, Steinberg and Kaye, Scholer all knew that Chadmoore had dissolved and was winding up its affairs.** Thus this sophisticated client and its sophisticated manager and sophisticated lawyers knew, or should have known, that the Chadmoore Put represented an invalid corporate action and, therefore, was unenforceable. Similarly these sophisticated parties knew, or should have known, that Moore lacked the authority to bind Chadmoore to an unlawful transaction. In its Brief, Fund LLC states that reliance is not a necessary element to an implied warranty of authority claim. (Appellee and Cross Appellant Brief at 29.) This assertion is incorrect.[4]

Moore contended both below and here that if Fund LLC **actually knew** that Moore did not have any authority to bind Chadmoore – a material fact that the Bankruptcy Court

---

[3] "[W]hether Chadmoore was prohibited by Colorado law from transacting the Chadmoore Put because of its dissolution statuts [sic] is a question of fact." (Document No: 184, at 14.)

[4] Additionally, Fund LLC argues that Moore waived this argument for failure to raise it below. (Appellee Brief at 29). This is untrue. Moore, in his July 16, 2007 Memorandum of Law, states: "If, for some reason, Fund LLC's reliance is not deemed unreasonable as a matter of law, at the very least, the parties' highly disputed account of the facts – specifically, regarding Fund LLC's negotiation tactics and the state of its knowledge before the Chadmoore Put was executed – precludes the award of summary judgment in Fund LLC's favor." (Document No: 147 at 8.)

5

found to be still in dispute – as a matter of law there can be no claim for breach of the implied warranty of authority.[5] The Bankruptcy Court determined that (1) whether Fund LLC reasonably relied on Moore's execution of the Chadmoore Put presents **questions of fact**; (2) whether Fund LLC has standing as a creditor of Chadmoore presents **questions of fact**; and (3) whether the Chadmoore Put is valid and enforceable under Colorado law presents **questions of fact**. Moore respectfully submits that it logically follows from the foregoing rulings that whether Fund LLC knew that Moore lacked the authority to bind Chadmoore similarly presents **questions of fact**. (Appellant's Brief at 30-34.)

The Restatement (Third) of Agency states, "It is a question of fact whether a third party knew that a person purporting to act as an agent lacked actual authority." Restatement (Third) of Agency § 6.10 comment c (2006). The Restatement goes on to say that in determining whether a party knew of an agent's lack of authority, all relevant circumstances surrounding the transaction, including inferences that a reasonable person would draw from facts known to the third party, should be considered. *Id.* Moreover, a third party's experience and familiarity with relevant business practices should also be considered when resolving this question of fact. *Id.*

Knowledge that an agent has no authority to bind a principal is a complete defense to a claim for implied warranty of authority, because a third party cannot thereafter claim harm from any reliance on the warranty. *Broughton v. Dona*, 101 A.D.2d 897, 898 (N.Y. App. Div. 1984). If a party knows that an agent can not bind the principal, then the party knows the

---

[5] Moore argued before the Bankruptcy Court that it is simply incredible to suggest that parties as sophisticated in the law as Steinberg and Kaye Scholer, who admittedly knew that Chadmoore had dissolved and was winding up its affairs, did not also know that a dissolved corporation in the process of winding up its affairs could not lawfully enter into a transaction like the Chadmoore Put. Certainly no such general ignorance of well settled law is advertised at www.kayescholer.com. Nonetheless, the Bankruptcy Court held that whether such ignorance of the law by Steinberg and Kaye Scholer existed presented a disputed material issue of fact and denied Moore's motion for summary judgment. The Bankruptcy Court did not, however, consider that ruling appropriate for interlocutory appellate review. Nor did it permit Moore to depose Kaye Scholer by a Rule 30(b)(6) witness to determine if that highly regarded corporate law firm had any institutional knowledge about the limitations imposed upon a corporation once it formally dissolved.

contract is not valid. *See*, Restatement (Third) of Agency § 6.10 (2006). And if the party knows the contract is not valid, then the party can not recover for its breach based upon an implied warranty of authority or any other legal theory.

Reliance is necessary for any recovery.[6] *Riverside Research Institute v. KMGA, Inc.*, 68 N.Y.2d 689, 692, 497 N.E.2d 669, 671 (N.Y. 1986). The Court of Appeals of New York has held, "[a]n agent implicitly warrants its own authority to act and is liable for all damages which flow naturally from **reliance** upon its assertion of authority." *Id*; *Barrett v. Lang*, 243 A.D. 35, 44 (N.Y. App. Div. 1934) (emphasis added) ("For the breach of that implied warranty [of authority] the agent is liable to the injured party for all damages which flow naturally from **reliance** upon the agent's assertion of authority,") (emphasis added) *aff'd*, 269 N.Y. 511; 199 N.E. 512 (N.Y. 1935). Additionally, the Restatement (Third) of Agency plainly states, "When a third party knows that a purported agent does not act with actual authority, the third party does not *rely* on an implied representation of authority in entering into a contract made by the purported agent on behalf of a principal." Restatement (Third) of Agency § 6.10 comment c (2006) (emphasis added).

### III. THE BANKRUPTCY COURT'S PRELIMINARY INJUNCTION WAS AN UNLAWFUL ORDER OF ATTACHMENT.

Fund LLC attempts to justify the Bankruptcy Court's issuance of an "injunction" attaching Moore's assets pursuant to Federal Rule of Civil Procedure 65 in circumstances that would not remotely justify the issuance of an order of attachment pursuant to Rule 64 by

---

[6] Fund LLC goes to some length to argue that an implied warranty of authority claim is a breach of contract claim, and therefore reliance is not an element. This legal contention is wholly unsupported. The cases cited by Fund LLC all hold to the contrary, namely that although an implied warranty of authority claim arises out of the execution of a contract, it is, by definition, not a breach of contract claim because the agent is not a party to the contract. *See*, *Baltzen v. Nicolay*, 53 N.Y. 467, 470 (N.Y. 1873); *Campbell v. Muller*, 43 N.Y.S. 233 (N.Y. App. Term 1897) ("The liability of the agent rests on the ground that he warrants his authority, not that the contract is to be deemed his own.").

referring to "approved asset freezing injunctions in anticipation of judgments on fraudulent transfer claims or demands for accounting." (Appellee's Brief at 42.)

The problem with that argument is that the transfers by Moore that Fund LLC criticizes were all to transferees over which no court in New York had jurisdiction.

Fund LLC similarly needed no "accounting" from Moore of transfers to him from Chadmoore, because it knew to the penny the amount of money Chadmoore paid to Moore in its last publicly pre-disclosed and post-disclosed pro rata transfer of most of its remaining cash to all of its former shareholders once its tax returns became final and no longer subject to review, namely the $423,535.50 to which reference is made in the so-called preliminary injunction[7]. Much of that $423,535.40 was paid to taxing authorities, including the IRS, long before the commencement of this action and the rest was used by Moore for living expenses. (Document No: 71.)

Similarly, there are no bankruptcy issues in this case justifying Fund LLC's evoking the broad equitable powers of a Bankruptcy Court. This is yet another case filed by a bankruptcy lawyer, who is also his own client, in an improper forum whose playing field the record in this case shows was anything but level.[8]

---

[7] As noted in greater detail in Moore's Appellant's Brief, at all relevant times Chadmoore faithfully and timely disclosed its dissolution and the time frame of its winding up of its affairs following the sale of all of its assets in its filings with the SEC.

[8] The following colloquy that occurred on March 11, 2005, in an action entitled *IBF v. Branch Banking and Trust Company*, 04 Civ. 5848 (JES) (S.D.N.Y), between Steinberg and United States District Judge John E. Sprizzo illustrates Mr. Moore's concern:

> THE COURT: Having been a party to bankruptcy at least – not personally – but some organization that I belong to was in bankruptcy, I could see why [the defendant wanted to be in district court]. The bankruptcy court has a very free and wheeling way of doing things.
>
> MR. STEINBERG: Perhaps Your Honor has answered your own question as to why I commenced in bankruptcy –
>
> THE COURT: I know that. The bankruptcy court has got a very flexible yard stick, not quite so flexible over here.

The "preliminary injunction" never should have been issued. It represents but one more example of the Bankruptcy Court's abuse of its discretion in a transparent effort to coerce settlement of a bogus claim by making the price of litigating that claim to final judgment too painful[9].

### IV. MOORE'S PRE-LITIGATION CREATION UNDER NEVADA LAW OF JURIDICAL ENTITIES TO WHICH HE CONTRIBUTED HIS THEN ASSETS FOR THE STATUTORILY APPROVED PURPOSE OF PROTECTING THEM AGAINST FUTURE CLAIMS SUCH AS THE ONES ASSERTED BY FUND LLC DID NOT CONSTITUTE "PRIOR" CONTEMPT OF THE BANKRUPTCY COURT'S PRELIMINARY INJUNCTION.

There is no **evidence** to contradict Moore's sworn testimony that he did not have $423,535.40 to pay into an escrow account. (Document No. 71.)

There is a great deal of evidence that long before this action was filed Moore created under the law of the State of Nevada, where he resides, several juridical entities whose purpose was to preserve assets of his transferred to them to protect those assets from future creditors such as Fund LLC in accordance with the laws of Nevada.

---

> MR. STEINBERG: That is correct, your Honor. That's why I commenced the action arising under the plan in the bankruptcy court.

(Transcript of Proceedings, Mar. 11, 2005, No. 04 Civ. 5848 (JES) (S.D.N.Y.), at 23:21-25, 24:1-6.)

[9] As noted by Mr. Steinberg during the Chadmoore settlement hearing the cost of this litigation is quite painful:

> MR. STEINBERG: We believe that, and through some spirited negotiation, we believe that any further demand on Chadmoore would force them to continue to litigate, having nothing else to lose, and that would lead to a further dwindling of available funds. We were also concerned about the time and cost involved in this litigation, and certainly we thought we had a good chance of succeeding on our pending summary judgment motion against Chadmoore which is sub judice before your Honor, but the certainly fully we were to be successful Chadmoore would appeal and we then would be stuck with one and perhaps two layers of appeal which would, again, cost money.

(Document No: 213, Transcript of Proceedings, Sept. 18, 2007, No. 02-41590 (BRL) (Bankr. S.D.N.Y.) at 4:7-19.)

9

These Nevada statutes are analogous to historic "spend thrift trusts." These juridical entities are all controlled by persons whose fiduciary duties are to place Moore's needs (such as funding his food and shelter) above those of Moore's creditors – or in the case of Fund LLC – putative creditor.

None of the persons of those entities are subject to the jurisdiction of any New York Court. Nor are the individuals in control of these entities subject to such jurisdiction.

The essence of Fund LLC's claim of "contempt" in both the Bankruptcy Court and this Court is that Moore did not prove that he could not "undo" the creation of these Nevada juridical entities or contravene the faithful performance of the fiduciary duties of the persons controlling such entities.

The simple fact is that Moore's testimony that he does not have $423,535.40 is unrebutted and is further corroborated by the extensive accountings he provided subject to the Bankruptcy Court's ever changing orders as to the information he was to provide.

The contempt findings and all monetary awards relating to them should therefore be vacated. These contempt findings are yet another example of the Bankruptcy Court's abuse of its discretion in a transparent effort to coerce settlement of a bogus claim by making the price of litigating that claim to final judgment too painful.

### V. THE BANKRUPTCY COURT CORRECTLY HELD THAT MOORE CANNOT BE LIABLE UNDER THE COLORADO PERSONAL LIABILITY STATUTE AND FUND LLC'S CROSS-APPEAL SHOULD THEREFORE BE DENIED.

The Bankruptcy Court did not err in granting summary judgment dismissing Fund LLC's claim against Moore predicated upon Section 7-102-104 of the Colorado Revised Statutes. Without citing a single case applying Section 7-102-104, much less supporting its interpretation of Section 7-102-104, Fund LLC states that Bankruptcy Court "misconstrued" the

statute. The Bankruptcy Court noted the same flaws in Fund LLC's "interpretation" of Colorado law below. The Bankruptcy Court held, "there is no case law interpreting the statute as Fund LLC would apply it here." (Document No: 184 at 10.)

What the Bankruptcy Court should have made plainer is that (a) the Supreme Court of the State of Colorado has expressly rejected the "interpretation" of this Colorado statute urged by Fund LLC and (b) following that express judicial rejection, the Legislature of the State of Colorado has not revised the statute to "correct" any misunderstanding of the Colorado Supreme Court as to the Legislature's intent with respect to this statute, namely that it applies only to pre-incorporation conduct.

Article 102 of Title 7 of the Colorado Business Corporation Act, titled "Incorporation," states:

> All persons purporting to act as or on behalf of a corporation without authority to do so and without good faith belief that they have such authority shall be jointly and severally liable for all liabilities incurred or arising as a result thereof.

C.R.S. § 7-102-104 (2006) (enacted in 1994; previously codified as § 7-3-104).

Colorado courts have expressly limited the scope of Section 7-102-104 and its predecessors to pre-incorporation events and nothing else. In *Micciche v. Billings*, 727 P.2d 367 (Colo. 1986), the Supreme Court of Colorado interpreted Section 7-3-104 of the Colorado Revised Statutes, which is the predecessor to Section 7-102-104.[10] The plaintiff sought to impose personal liability upon a vice-president of dissolved corporation for the corporation's obligation to provide the plaintiff with workmen's compensation benefits. *Id.* at 369. The

---

[10] *Micciche* applied Section 7-3-104, which provided as follows:

> All persons who assume to act as a corporation without authority to do so shall be jointly and severally liable for all liabilities occurring or arising as a result thereof.

Colo. Rev. Stat. § 7-3-104 (1973, repealed 1994).

11

*Micciche* court undertook an exhaustive analysis of the legislative history of Section 7-3-104 and of the procedure of forming and maintaining a corporation under Colorado law. *Id.* at 369-71. The court noted that the Colorado legislature had previously enacted several statutes imposing penalties or personal liability upon individual corporate officers for certain post-incorporation acts, such as failure to file a biennial report. *Id.* at 371. The court held that the legislative intent of the provision was "to impose personal liability upon those persons who take it upon themselves to act as a corporation without having undertaken a bona fide effort to achieve corporate status by complying with the statutory requirements for incorporation." *Id.* Based on its review of the Colorado legislature's enactment of prior punitive provisions, the Court held that, if the Colorado legislature intended Section 7-3-104 to be applied to impose liability upon officers of a validly formed corporation, it would have made its intent clear as it had when it previously enacted other punitive statutes. *Id.* at 372. The Supreme Court of Colorado's ultimate holding was very clear: "We thus limit the scope of section 7-3-104 to those instances when persons act as a corporation without making any bona fide effort to achieve corporate status by complying with the statutory requirements for incorporation." *Id.*; *see also Sims v. Ottenhoff*, 879 P.2d 436, 437 (Colo. Ct. App. 1994) (following *Micciche* in applying Section 7-20-106, a version of Section 7-102-104 applicable to non-profit corporations, and holding that an officer cannot be personally liable for post-incorporation conduct).

Here, it is undisputed that we are dealing with post-incorporation activity. Although arguably the literal language appears to extend to persons acting on behalf of any corporation, commentators have rightfully acknowledged that "[n]onetheless, both the case law under the substantially similar Prior Code § 7- 3-104 and the legislative history of the Act

12

indicate that this section is intended to apply only to situations in which a corporation was never validly formed." 1A *Colo. Prac., Bus. Corp. Deskbook* § 7-102-104 (2007-2008 ed.).

The acts that Fund LLC is attempting to impute to Moore personally occurred while Chadmoore was an existing, though dissolved, Colorado corporation. The Supreme Court of Colorado's holding in *Micciche* is clear that Section 7-102-104 cannot be applied in the dissolution context to impose personal liability upon an individual corporate officer. The Bankruptcy Court correctly held that Colorado's corporate law cannot, as a matter of law, be used in this context to hold an individual officer such as Moore personally liable.

## Conclusion

For the foregoing reasons, this Court should vacate all three judgments and either (a) dismiss this adversary proceeding for lack of subject matter jurisdiction or (b) preferably, accept Moore's agreement to submit the Moore Claims to the jurisdiction of the Bankruptcy Court upon the condition that this Court immediately vacate the reference of the Moore Claims to the Bankruptcy Court. This Court should also deny Fund LLC's cross-appeal and award Moore his costs.

Dated: February 15, 2008
      New York, New York

BAINTON MCCARTHY LLC

By: /s/ J. Joseph Bainton
     J. Joseph Bainton
Bainton McCarthy LLC
26 Broadway
Suite 2400
New York, New York 10004-1840
(212) 480-3500
*Attorneys for Robert Moore*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: ) | |
| ) | |
| INTERBANK FUNDING CORP., *et al.*, ) | |
| ) | |
| Debtors. ) | |
| ) | |
| ) | |
| IBF FUND LIQUIDATING, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -against- ) | No. 07-CIV-10665 (DAB) |
| ) | |
| CHADMOORE WIRELESS GROUP, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ROBERT MOORE, ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| -against- ) | **AFFIDAVIT OF SERVICE** |
| ) | |
| KAYE SCHOLER LLP, *et al.*, ) | |
| ) | |
| Third-Party Defendants. ) | |

STATE OF NEW YORK )
                   ) ss.
COUNTY OF NEW YORK )

- 1 -

Peter H. Choi, being duly sworn, deposes and says: I am not a party to this action, am over 18 years of age and reside in the County of New York, State of New York. On February 15, 2008, I served a true and correct copy of the *Appellant's Reply Brief* via the Court's ECF System upon:

>Arthur Steinberg, Esq.
>Heath D. Rosenblat, Esq.
>Kaye Scholer LLP
>425 Park Avenue
>New York, NY 10022

Peter H. Choi

Sworn to and executed before me,
This 15th day of February, 2008

MICHAEL T. ROUSSEL
Notary Public, State of New York
No. 01RO6156831
Qualified in Richmond County
Commission Expires December 4/20 10